## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL LAW CENTER ON
HOMELESSNESS & POVERTY
2000 M Street NW, Suite 210
Washington, DC 20036,

                   Plaintiff,

    v.

U.S. GENERAL SERVICES
ADMINISTRATION
1800 F Street NW
Washington, DC 20405,

                Defendant.

Case No._____

## COMPLAINT

      This Complaint is submitted on behalf of Plaintiff National Law Center on Homelessness

and Poverty ("NLCHP") and seeks an order directing Defendant United States General Services

Administration ("GSA") to fulfill its obligations under the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552, and produce documents responsive to NLCHP's FOIA request for information

regarding GSA's compliance with Title V of the McKinney-Vento Act ("McKinney-Vento" or the

"Act").

### I.    INTRODUCTION

      1.    McKinney-Vento was enacted in 1987 and obligates federal agencies to provide

homeless service organizations with a right of first refusal to acquire and use unneeded government

properties for the purpose of alleviating homelessness.  The Act specifically charges Defendant

GSA, and certain other federal agencies, with implementing this program.

2.      Since its enactment, the Act has been the subject of multiple court proceedings seeking to require Defendant GSA and other federal agencies to fulfill their obligations under the Act.  As described in greater detail below, these actions have resulted in this Court's issuance of an injunction that is still in force today.  Most recently, this Court rejected the government's motion to vacate the injunction finding that there was "no evidence supporting [the government's] claim" that "the remedy provided by the [injunction] ha[d] been achieved."  *See NLCHP v. U.S. Dep't of Veterans Affairs*, 931 F. Supp. 2d 167, 172 (D.D.C. 2013).  Instead, the Court expanded the injunction. *Id.*

3.      For the past 30 years, Plaintiff NLCHP has participated in the injunction proceedings before this Court and, more generally, has worked to ensure that the Act's potential for assisting the homeless is fully realized.  In that connection, it served on GSA (in May 2017) the FOIA request that is the subject of this Complaint.  In its request, NLCHP sought information regarding GSA's efforts to comply both with its obligations under the Act as well as this Court's injunction.  As relevant here, Requests 4 to 7 asked for information regarding GSA's involvement in the process by which applications for such properties by organizations involved with the homeless are processed and approved.

4.      Notwithstanding its central role in the disposition of surplus government properties, GSA's response to NLCHP's FOIA request was anemic.  In total, only 16 documents consisting of 232 pages were produced, most of which were already publicly available.  Further, no documents were produced in response to four of NLCHP's nine requests.  As to those requests, GSA took the position that it either did not have any responsive material, or that the material was privileged and thus could be withheld from production pursuant to FOIA's deliberative-process and attorney-client privileges.  *See* 5 U.S.C. § 552(b)(5).

5.      By letter dated September 28, 2017, NLCHP filed an appeal challenging the overall adequacy of GSA's production, identifying, by way of example, specific flaws in GSA's responses and taking issue with GSA's withholding of all potentially responsive internal documents.  On November 3, 2017, NLCHP's appeal was summarily denied, thus necessitating the filing of this Complaint, which seeks a declaration that GSA has violated FOIA, and an order directing GSA to conduct an adequate search, produce all non-exempt documents responsive to NLCHP's requests, or provide a *Vaughn* index with respect to all withheld documents.

## II.    THE PARTIES

6.      NLCHP is a national organization, located at 2000 M Street, NW, in the District of Columbia, which has long worked to eliminate homelessness in the United States.  To that end, NLCHP litigates against both state and federal agencies to ensure compliance with the laws that have been enacted to address homelessness, including the Act.  NLCHP also provides assistance to homeless services organizations under Title V of the Act ("Title V"), which provides public or nonprofit entities that serve the homeless a first right of refusal to acquire unneeded government properties at no cost.

7.      Defendant GSA is headquartered at 1800 F Street, NW, in the District of Columbia and is the federal agency that is primarily responsible for the "care and handling" of surplus property pending its disposition.  40 U.S.C. § 542.  In particular, GSA's Office of Property Disposal is tasked with disposing of real property that is owned but no longer used by federal agencies, including properties transferred to public or non-profit agencies pursuant to Title V of the Act. *See* GSA, *FY 2013 Federal Program Inventory* (May 30, 2013), https://bit.ly/2HNI2MK; GSA, *Surplus Real Property Available for Public Use*, https://bit.ly/2JXdhFE (last reviewed Aug.

13, 2017). GSA also plays a role in considering whether to prioritize homeless assistance in disposing of surplus property. 42 U.S.C. § 11411(f)(3).

8.     GSA shares the responsibility of the Title V property disposal program with the U.S. Department of Housing and Urban Development ("HUD") and the U.S. Department of Health and Human Services ("HHS"). HUD surveys federal agencies to identify suitable unneeded real property, and sends the list to GSA to determine their availability "for use by the homeless." 45 C.F.R. § 12a.1, .5. HHS is responsible for administering the application process by which property is transferred to organization working with the homeless under Title V of the Act.

## III.   JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552. This Court also has authority to issue the requested declaratory relief under 28 U.S.C. §§ 2201-2202.

10.    Venue is proper in the District of Columbia pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 88 and 1391(b).

## IV.   BACKGROUND

### A.  The McKinney Homeless Assistance Act of 1987

11.    Congress enacted the Act in 1987, recognizing that "the Federal Government has a clear responsibility and an existing capacity to fulfill a more effective and responsible role" to meet the needs of homeless people. 42 U.S.C. § 11301(a)(6). This legislation was the first—and remains the only—major federal legislative response aimed at addressing homelessness.

12.    Title V of the Act created a program pursuant to which unneeded (i.e., surplus, excess, underutilized, or unutilized) real property could be transferred at no cost to public and nonprofit agencies to assist the homeless. Under Title V, such organizations are provided a right

of first refusal with respect to surplus properties owned by federal agencies that are determined to be both available and suitable for use by the homeless.  42 U.S.C. § 11411(d), (f) (providing priority to "uses to assist the homeless").

13.     Under this program, organizations involved with homeless people (i.e., homeless service providers) submit applications to HHS to acquire properties that have been determined by HUD and GSA to be both available and suitable for use by homeless people.  If HHS determines that an applicant has submitted a satisfactory plan to use the property for homeless people and to marshal the resources to carry out its plans, HHS works with the agency that owns the land (i.e., the landholding agency) in determining whether to transfer the property to the applicant.  If the application is approved, the federal government then executes a deed or lease conveying the property at no cost to the homeless service provider.

14.     Homeless service providers have acquired and used Title V properties in a variety of ways to help meet the needs of people experiencing homelessness. To date, approximately 500 buildings on nearly 900 acres of land in thirty states and the District of Columbia have been transferred under Title V to create emergency shelters, transitional housing for domestic violence survivors, permanent housing for mentally ill veterans, as well as office and warehouse space.

**B. The Federal Government Has Repeatedly Failed To Meet Its Obligations Under Title V**

15.     Notwithstanding these transfers of land, the enormous potential of Title V has not been realized, in part, because the federal agencies—including GSA—that have been charged with administering this program have not fully complied with their obligations under the Act.  Indeed, shortly after its enactment in 1987, NLCHP and others initiated litigation before this Court that resulted in the issuance of an injunction directing the agencies charged with administering Title V to take certain steps to meet their obligations under the Act. *See Nat'l Coal. for Homeless v. U.S.*

*Veterans Admin.*, CIV. A. No. 88-2503-OG, 1988 WL 136958, at *1-4 (D.D.C. Dec. 15, 1988). Since that time, the injunction has been made permanent and renewed multiple times. *See NLCHP v. U.S. Veterans Admin.*, 765 F. Supp. 1 (D.D.C. 1991), *aff'd sub nom. NLCHP v. U.S. Dep't of Veterans Affairs*, 964 F.2d 1210 (D.C. Cir. 1992); *NLCHP v. U.S. Veterans Admin.*, 819 F. Supp. 69 (D.D.C. 1993); *NLCHP v. U.S. Veterans Admin.*, 98 F. Supp. 2d 25 (D.D.C. 2000); *NLCHP v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127 (D.D.C. 2012); *NLCHP v. U.S. Dep't of Veterans Affairs*, 931 F. Supp. 2d 167 (D.D.C. 2013).

16.     This injunction requires GSA and other federal agencies to, among other things, send availability determinations to HUD, increase outreach efforts to educate homeless service providers about properties that become available under Title V, and "report to HUD . . . any and all excess, surplus, unutilized, or underutilized properties owned or controlled by the agencies." *See Nat'l Coal. for Homeless*, 1988 WL 136958, at *1; *see also NLCHP*, 819 F. Supp. at 77 (order granting motion to modify and further enforce the 1988 permanent injunction).  The injunction also specifically requires GSA, HUD, and HHS to submit monthly reports to NLCHP identifying (a) properties made available to assist the homeless, (b) the status of all applications submitted and pending, properties sold, transferred or otherwise disposed of, and (c) all organizations who expressed interest in the available properties. *NLCHP*, 819 F. Supp. at 76.  Additionally, each of these agencies must certify to the Court that it has satisfied these obligations.

17.     Over the years, the government has moved without success to modify this injunction.  More specifically, in 1993, the Court concluded that, although agency compliance "ha[d] improved since the Court issued its permanent injunction[,] . . . defendants ha[d] not fully complied with their obligations under the McKinney Act." *NLCHP*, 819 F. Supp. at 77.  The injunction thus largely remained in place.  The Court reached a similar conclusion in 2013, finding

that there was no evidence to support the government's claim that "the remedy provided by the [injunction] ha[d] been achieved and is demonstrably durable [and] ongoing enforcement is unnecessary." *NLCHP*, 931 F. Supp. 2d at 172.  To the contrary, the Court granted NLCHP's motion to expand the injunction after the agencies confessed to failing to disclose properties in an attempt to keep them out of the Title V process. *See id.* at 177.

### C. NLCHP's Requests For Information

18.     Since 2013, NLCHP has continued to monitor the performance of GSA and the other agencies tasked with administering Title V.  As part of those efforts, NLCHP has served FOIA requests on these agencies requesting documents regarding both the agencies' efforts to identify surplus property that is available and to process applications for such property.  The FOIA request that is the subject of this Complaint was part of that effort.

19.     Specifically, on May 24, 2017, NLCHP submitted nine discrete requests to GSA asking the agency for documents relating to its efforts to identify properties that were both available and suitable for use by the homeless (Requests 1 to 3) and documents regarding its involvement in the process pursuant to which applications for specific properties by homeless service providers are approved (Requests 4 to 9).  *See* Exhibit A hereto.  Consistent with its effort to monitor GSA's performance of its obligations under both the Act and this Court's injunction, the FIOA requests sought documents for the period January 1, 2010 to the date of the request.

20.     Notwithstanding the requirement under FOIA that GSA "determine . . . whether to comply with such request[s]" and "immediately notify" NLCHP of "such [a] determination and the reasons therefor" within 20 business days, 5 U.S.C. § 552(a)(6)(A)(i), GSA did not acknowledge receipt of the FOIA Request until July 18, 2017.  Further, it did not actually respond

to NLCHP's FOIA request until September 18, 2017—four months after the requests were submitted. *See* Exhibit B hereto.

21.     As previously noted, GSA's response was seriously deficient.  Only 16 records were produced and much of that material consisted of publicly available reports or reports that GSA had already shared with NLCHP. Additionally, with respect to six of the nine requests, GSA's responses did not provide any responsive documents.  With respect to Requests 4 and 8, the documents produced were not responsive; no documents were produced in response to Requests 2, 3, 5 and 7; and GSA withheld all documents responsive to Request 5 on privilege grounds but did not provide a *Vaughn* Index or any other indication of the number or specific nature of the documents being withheld.

22.     Given the paucity of information provided by GSA, NLCHP immediately submitted an appeal objecting to GSA's failure to provide meaningful responses to each of NLCHP's specific requests for information.   *See* Exhibit C hereto.   In this regard, NLCHP questioned whether an adequate search had been conducted and identified, by way of example, specific deficiencies in GSA's responses to Request 4, 6 and 7.   NLCHP also took issue with GSA's withholding of all internal documents responsive to Request 5, and noted that the agency deliberative process was not intended to shield from production all internal documents.  NLCHP further noted that GSA had "identified but withheld numerous responsive records in their entirety without adequate justification, providing scant information or means by which NLCHP can make a reasoned judgment about the legitimacy of those denials."

23.     On November 3, 2017, GSA summarily denied NLCHP's appeal.  It did not address the issue of whether an adequate search had been conducted, nor did it explain why it had taken more than four months to respond to NLCHP's requests or why it had asked for additional time in

early September to complete its review.  *See* Exhibit D hereto.  GSA also completely ignored NLCHP's objection to GSA's withholding of all internal documents on privilege grounds (*see* discussion of response to Request 5 below).  Notwithstanding the fact that a significant portion of NLCHP's appeal was focused on this issue, GSA simply dismissed NLCHP's concerns in a single sentence.  Finally, GSA did not directly respond to the specific deficiencies identified by NLCHP in its appeal.  Instead, it either avoided the issue presented (*see* discussions of responses to Requests 4 and 6), or took with the position without justification that GSA was not involved in the application process and thus had no responsive material (*see* response to Request 7 below).

## V.   THE FREEDOM OF INFORMATION ACT

24.   Under the FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  While nine limited exemptions to this disclosure requirement exist, there is a "strong presumption in favor of disclosure" and "the statutory exemptions, which are exclusive, are to be 'narrowly construed.'"  *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8 (D.C. Cir. 2005).  Further, "[t]he government bears the burden of proving the applicability of any statutory exemption it asserts in denying a FOIA request."  *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000).

25.   GSA's FOIA regulations further codify the presumption in favor of disclosure:  In response to a records request, GSA cannot "withhold a record unless there is a *compelling* reason to do so; i.e., disclosure will likely cause harm to a Governmental or private interest."  41 C.F.R. § 105-60.103-2 (emphasis added).  The regulations further make clear that "[i]n the absence of a

compelling reason, GSA will disclose a record even if it otherwise is subject to exemption." *Id.* ("GSA will cite the compelling reason(s) to requesters when any record is denied under FOIA.").

## VI.   DEFICIENCIES IN GSA'S RESPONSES

GSA's responses to NLCHP's FOIA requests suffer from the following three deficiencies: (a) GSA did not conduct an adequate search for responsive material; (b) GSA has improperly withheld responsive, non-privileged documents; and (c) GSA has not produced all documents responsive to Requests 4, 6, and 7 regarding its involvement in the application process.

### A.  GSA Failed To Conduct An Adequate Search

26.     Under FOIA, an agency must make a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

27.     Despite significant delay, GSA produced only 16 records in response to NLCHP's requests, most of which were publicly available or already in the possession of NLCHP.  As previously noted, GSA is the principal government agency responsible for the disposition of surplus federal government property.  It is also a significant landholding agency in its own right, and it is charged with significant responsibilities under Title V for the identification of available surplus property that is suitable for use by the homeless.  Accordingly, GSA's production after four months of only 16 documents strongly suggests that an adequate search was not conducted.

28.     That conclusion also draws support from GSA's responses to NLCHP's specific requests.  For example, Request 6 asked for interagency communications related to pending expressions of interest or applications under Title V.[1]  In its response, GSA provided only

---

[1] The full text of request 6 reads as follows: "Communications with other federal, state, or local government agencies related to pending expressions of interest and/or applications for federal

communications related to four federal properties and defended its production by stating that it "interpreted [NLCHP's] request as that for communications for all properties that are *currently* potentially available under Title V."  As discussed below, GSA's interpretation is unduly narrow. *See* Section VI.C below.  But even under that interpretation, there is reason to believe that GSA did not produce all records in its possession.  HHS's June and July 2017 monthly reports— submitted to NLCHP as required under the injunction—indicated two expressions of interest for the Gallagher Memorial USARC in New Mexico, which GSA assigned the Control Number NM29 7-D-NM-0612-AA.  *See* Exhibit E, hereto at 2-3.  According to the HHS reports, prospective applicants for this property had until September 23, 2017 to submit a Title V application to HHS. However, GSA did not include in its response correspondence with any other agencies regarding this property.  Based on its involvement with the application process relating to this property NLCHP believes that additional documents exist and would be located following an adequate search.

### B.  GSA Improperly Invoked Exemption 5 In Withholding Responsive Documents

29.   Documents may be withheld under FOIA Exemption 5 if they are "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The purpose of this exemption is to protect from disclosure documents that relate to intra-and interagency decision-making. This exemption is not a valid basis for withholding factual material that cannot "reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating

---

properties potentially available under Title V, including but not limited to communications with the Department of Health and Human Services (HHS) regarding pending applications for federal properties pursuant to 45 C.F.R. Part 12 or [42] U.S.C. 11411."

judgment." *Petrol. Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992).

30.   Further, when withholding records responsive to a FOIA request under this exemption, GSA has an obligation to provide sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 959 (D.C. Cir. 1979).   Indeed, courts often require that the agency submit a "*Vaughn* index" identifying each document being withheld from production and providing an explanation of the basis for the withholding.   *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

31.   It is also not appropriate to withhold from production an entire document when only a portion of the document contains material that is exempted form production.   In such instances, the remainder of the document must still be released unless the non-exempted portions "are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see also* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

32.   NLCHP's Request 5 focused principally on GSA's actions and practices to implement its Title V program for surplus real properties.   Specifically, this request asked for "[i]nternal communications" regarding these properties.   This request did not call for any materials related to GSA's formulation of its Title V policies.[2]

---

[2] The full text of Request 5 reads as follows: "Internal communications regarding federal properties potentially available under Title V, including those between or among program offices or administrative divisions of GSA."

33.  GSA did not produce any records in response to Request 5.  Instead, GSA invoked FOIA's Exemption 5, claiming that it was "withholding this information as it contains attorney work-product, attorney-client conversations, and pre-decisional conversations and recommendations." Exhibit B at 2-3.  This response is not sufficient as it provides no reasonable basis for NLCHP to determine whether GSA properly withheld the documents.  The specific documents at issue are not identified, and GSA made no effort to explain the specific basis for its privilege claims by, for instance, providing a *Vaughn* index.  It made no effort in its response to NLCHP's appeal to even address this issue, instead brushing it aside in a single sentence.  *See* Exhibit D at 2.

34.  Finally, even if the requested documents contained privileged or pre-decisional statements, GSA did not attempt to segregate and produce the factual portions of the documents that it claims are exempt from production under Exemption 5.  Such an approach violates FOIA.

**C.  GSA Failed To Produce Documents Relating To The Title V Application Process**

35.  As noted above, Requests 4, 6, and 7 of NLCHP's FOIA request were designed to elicit information regarding GSA's involvement in the process pursuant to which applications by homeless service providers for Title V properties are evaluated and approved.  GSA's responses to these requests are inadequate.

36.  Request 4 asked for "[d]ocuments or materials related to applications for available federal properties under Title V" and any "communications between GSA and applicants for federal properties potentially available under Title V." [3] In response to this request, GSA

---

[3] The full text of Request 4 reads as follows: "Documents or materials related to applications for available federal properties under Title V, including applications pursuant to 45 C.F.R. § 12a.9(d) and [42] U.S.C. 11411(e) and communications between GSA and applicants for federal properties potentially available under Title V."

provided only a summary of the process by which GSA reconciles its inventory of properties and its Title V properties.  This document is not responsive to NLCHP's request for documents regarding the application process.  Instead, it relates to the process by which available properties are identified for inclusion in the Title V process.  Moreover, GSA's claim that no other responsive documents exist because GSA does not participate in the vetting and evaluation of applications for Title V property (Exhibit D at 2) is not credible.  HUD property listings show that GSA is often the landholding agency for Title V properties.  *See* HUD, *Title V, Federal Surplus Property Program Suitability Determination Listing for 08/18/2017*, https://bit.ly/2Hc9Hpv, and according to GSA itself, landholding agencies play a role in the vetting and evaluation process.  *See* Exhibit D at 2.  Additional documents responsive to Request 4 should therefore have been produced.

37.    Request 6 asked for "[c]ommunications with other federal, state, or local government agencies related to pending expressions of interest and/or applications for federal properties potentially available under Title V."[4]   In response, GSA produced documents regarding four potential Title V properties, even though NLCHP is aware that GSA corresponded just with HHS regarding at least 50 such properties.  For example, GSA was heavily involved in the evaluation of a property in Edison, New Jersey during 2016 (GSA No. NJ-0944-AA), yet produced no records related to that property.  Moreover, GSA's claim that NLCHP's request only sought documents relating to "current" projects is an unduly narrow reading of this request which sought by its terms sought documents relating to all projects that were "pending" during the period of the request (i.e., January 1 2010 to the date of the FOIA request).  Given that GSA

---

[4] The full text of Request 6 is set forth in Note 1 above.

and HHS frequently communicate regarding applications filed by homeless service providers and their right of first refusal, additional documents should have been produced.

38.     Request 7 asked for "[p]olicies or criteria used by GSA to evaluate applications for federal properties potentially available under Title V."[5]   In response, GSA provided no documents, stating that "evaluation and vetting of the applications occur [sic] within the landholding agencies, not . . . GSA."     *See* Exhibit B at 3.   Similarly, in denying NLCHP's appeal, GSA asserted that it "does not participate in the vetting and evaluation of Title [V] property applicants" under 45 C.F.R. § 12a.5.   *See* Exhibit D at 2.   These statements are demonstrably false.   GSA is a landholding agency or the disposal agency for many unavailable or unsuitable federal properties. *See, e.g.*, 81 Fed. Reg. 75140 (Oct. 28, 2016) (listing at least 60 such properties); 82 Fed. Reg. 8622 (Jan. 27, 2017) (listing GSA as landholding agency); *see also* Exhibit D at 2.   As such, GSA—at a minimum—is involved in the application process with respect to such properties because it is in possession of property information required from applicants, and it controls access to those properties.   Furthermore, after an application is approved by HHS, GSA may still decline to transfer the property to the approved applicant if there are other important national needs.   *See* 45 C.F.R. § 12a.10(b).   Furthermore, while GSA does not play an official role in approving Title V applications, GSA must have a method for vetting Title V applications in its duty to evaluate it against competing national needs.   *See id.* ("GSA will generally give priority of consideration to uses to assist the homeless").   These actions are undoubtedly part of the "evaluat[ion] [of] applications," and therefore GSA should

---

[5] The full text of Request 7 reads as follows: "Policies or criteria used by GSA to evaluate applications for federal properties potentially available under Title V."

have provided documents and materials regarding its policies and criteria regarding such decisions.

## COUNT I
### (Violation of FOIA, 5 U.S.C. § 552)

39.    NLCHP hereby re-alleges and incorporates by reference paragraphs 1 to 38 above.

40.    NLCHP, through its May 24, 2017 FOIA request, properly requested records within GSA's control.

41.    NLCHP has exhausted the applicable administrative remedies with respect to GSA's wrongful withholding of records specifically requested in NLCHP's May 24, 2017 FOIA request.

42.    GSA is in violation of FOIA by failing to conduct an adequate search for documents and materials responsive to NLCHP's nine requests.

## COUNT II
### (Violation of FOIA, 5 U.S.C. § 552)

43.    NLCHP hereby re-alleges and incorporates by reference paragraphs 1-42 above.

44.    GSA is in violation of FOIA by inappropriately withholding responsive documents under Exemption 5.

## COUNT III
### (Violation of FOIA, 5 U.S.C. § 552)

45.    NLCHP hereby re-alleges and incorporates by reference paragraphs 1-44 above.

46.    GSA is in violation of FOIA by unlawfully withholding documents responsive to NLCHP's Requests 4, 5, 6, and 7.

## PRAYER FOR RELIEF

WHEREFORE, NLCHP respectfully requests this Court to:

(1)     Declare that GSA violated the Freedom of Information Act by failing to lawfully satisfy NLCHP's May 24, 2017 FOIA request;

(2)     Order GSA, by a certain date, to conduct an adequate search and release all records or portions of records responsive to Requests 4, 5, 6, and 7 of NLCHP's May 24, 2017 FOIA request;

(3)     Order GSA, by a certain date, to produce to NLCHP any and all non-exempt records, or portions of records, responsive to Requests 4, 5, 6, and 7, as well as a *Vaughn* index of any records, or portions of records, withheld due to a claim of exemption;

(4)     Enjoin GSA from improperly withholding records responsive to NLCHP's requests;

(5)     Retain jurisdiction of this action to ensure the processing of NLCHP's FOIA request and that no agency records are wrongfully withheld;

(6)     Award NLCHP reasonable attorney fees and litigation costs in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(7)     Grant such other relief as the Court deems just and proper.


Dated: May 2, 2018                      Respectfully Submitted,


                                        */s/ James F. Bendernagel*
                                        James F. Bendernagel (Bar No. 320754)
                                        Christopher A. Eiswerth (Bar No. 1029490)
                                        Faraz R. Siddiqui*
                                        SIDLEY AUSTIN LLP
                                        1501 K Street NW
                                        Washington, DC 20005
                                        Telephone: 202-736-8000
                                        Facsimile: 202-736-8711
                                        jbendernagel@sidley.com
                                        ceiswerth@sidley.com
                                        fsiddiqui@sidley.com

*Counsel for Plaintiff*

*Petition for admission pending